**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**

**DEBORAH LAUFER,**
        **Plaintiff,**
**v.**                                                  **Case No: 2:20-cv-103**

**TRIPLE W HOSPITALITY, LLC and**
**DEVELOPMENT AUTHORITY OF**
**APPLING COUNTY,**
        **Defendants.**


**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**


Attorneys For Plaintiff

## I.      Introduction

Plaintiff, is a disabled person within the meaning of the Americans With Disabilities Act, 42 U.S.C. Sections 12181, et seq. ("ADA"). Defendant books rooms for its hotel through an online online reservations service operated through multiple websites.  (Hereinafter "websites", "online reservations systems" or "ORS".) Laufer Affid., para. 6, Exhibit A attached hereto.  The purpose of this ORS is so that Defendant can reach out and market to persons all over the country, including Florida,  in their own homes,  to solicit their patronage, provide them with information so that they can make a meaningful choice in planning trips, and, in some instances, book a room at the hotel.  As such, the Defendant's ORS is required to comply with the requirements of 28 C.F.R. Section 36.302(e)(1)(hereinafter "Regulation"), by identifying and allowing for booking of accessible rooms and providing accurate and sufficient information as to whether all the features at the hotel are accessible. On multiple occasions prior to the filing of this lawsuit, Plaintiff reviewed the ORS for Defendant's hotel and found that it did not comply with the Regulation.  Laufer Affid., para. 6. Plaintiff therefore filed the instant action for injunctive relief pursuant to the ADA. Plaintiff also has a system to ensure that she properly maintains standing.  *Id*. at para. 8. She maintains a list of all hotels she has sued over  ORS violations. *Id.* She goes through and updates this list constantly. *Id.* With respect to each hotel she sues or has sued, she revisits the hotel's ORS shortly after the complaint is filed.  She also records the date when the ORS is required to be complaint and then revisits it. By this system, Plaintiff has already revisited the ORS for this hotel after having filed her Complaint. *Id.*

## II.     The Applicable Standard

The standards applicable to jurisdictional dismissal are set forth in Federal Rules Of Civil

Procedure 12(b)(1), 12(b)(6) and 56. Under Fed. R. 12(b)(6), a court must take the allegations of the complaint as true and all reasonable inferences must be construct in the light most favorable to the plaintiff. *Harris v. Procter & Gamble Cellulose Co.*, 73 F.3d 321, 324 (11th Cir. 1996). Only 12(b)(1) allows a district court to make a factual credibility determination on jurisdiction. Under Fed. R. Civ. P. 12(b)(1), a District Court considering jurisdictional challenges is free to independently weigh facts, with no presumptive truthfulness attaching to the plaintiff's allegations or evidence. *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003).

However, the standard applicable to 12(b)(1) can only be applied if the "if the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action." *Id.* at 925, citing *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997). If a jurisdictional challenge does implicate the merits of the underlying claim, then:

> The proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case . . . . Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection for the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place great restrictions on the district court's discretion . . . .

*Morrison*, 323 F.3d at 925, citing *Garcia and Willimason v. Tucker*, 645 F.2d 404, 415-16 (5th Cir. 1981). As the jurisdictional consideration included Plaintiff's Affidavit, the standard of Rule 56 (rather than 12(b)(6)) should have been applied. Under Rule 56, "the district court may not weigh the evidence or find facts. Instead, the court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party." *Morrison*, 323 F.3d at 924. In the case at bar, Defendant challenges Plaintiff's right to injunctive

relief pursuant to 42 U.S.C. Section 12188 and challenges whether Plaintiff suffered injury within the meaning of 42 U.S.C. Section 12182. Therefore, the jurisdictional challenges implicates the merits of plaintiff's federal claims and this Court cannot make a credibility determination.

### III.   The Pleadings Are Sufficient

Fed. R. Civ. P. 8 requires that the pleader provide a short and plain statement of the claim showing entitlement to relief. Many courts have upheld the sufficiency of virtually identical pleadings and have rejected challenges against their sufficiency. See, e.g., *Laufer v. U.L.S.T., LLC dba Waterfront Hotel & Marina*, 2020 U.S. Dist. LEXIS 206417  (N.D.Ill. 11/4/20)(denying motion to dismiss); *Kennedy v. New Yorker Hotel Miami, LLC*, 18-62897, DE 34 (S.D. Fla. 6/6/19); *Kennedy v. Patel Brothers, Inc.*, 19-60613, DE 23 (S.D. Fla. 6/6/19);  *Kennedy v. Guru Krupa, Inc.*, 0:18-cv-63088-WPD, DE 18 (S.D. Fla. 2/26/19); and *Kennedy v. Murnane, et al.*, 0:18-cv-63086-WPD, DE 10 (S.D. Fla. 3/5/19).

Numerous courts have also considered such allegations as sufficient when they granted default judgment. See *Kennedy v. Excel Hospitality, LLC*, 1:20-cv-2334, DE 15 (N.D. Il. 7/31/20); *Kennedy v. Cape Siesta Motel, LLC*, 18-81811, 0:18-cv-61811-MGC, DE 20 (S.D. Fla. 1/18/2019); *Kennedy v. Shivnit, Inc.*, 0:18-cv-63094-UU, DE 12 (S.D. Fla. 1/30/19); *Laufer v. Laxmiben Champiklal, LLC*, 4:20-cv-32-LMM, DE 24 (N.D. Ga. 9/10/20); *Kennedy v. Yaish & Tish Ltd., LLC*, 19-cv-61992-RAR, DE 14 (S.D. Fla. 9/27/19);   *Kennedy v. Londamerican Real Estate Ltd.*, 19-cv-61228-SMITH/VALLE, DE 18 (S.D. Fla. 8/21/2019); *Kennedy v. Guruhari Hospitality, LLC*, 0:19-cv-61139-WPD, DE 18 (S.D. Fla. 7/11/2019); *Kennedy v. Moreno*, 19-60550-CIV-ALTMAN, DE 20, (S.D. Fla. 6/26/2019);  *Kennedy v. Pacifica Tampa Ltd*

3

*Partnership*, 5:17-cv-442-JSM-PRL, DE 7 (M.D. Fla. 1/25/18). *Kennedy v. Fernandez*, 19-60876, DE 18 (S.D. Fla. 6/11/2019);  *Kennedy v. Astoria Hotel Suites, LLC*, 19-cv-60160, DE 17 (S.D. Fla. 3/22/19); *Kennedy v. Dockside View, LLC*, 2:18-cv-14444-KAM (S.D. Fla. 1/19/19); *Kennedy v. Cape Siesta Motel, LLC*, 18-81811, 0:18-cv-61811-MGC, DE 20 (S.D. Fla. 1/18/2019); *Kennedy v. Shivnit, Inc.*, 0:18-cv-63094-UU, DE 12 (S.D. Fla. 1/30/19); *Kennedy v. Terrace Park Suites, LLC*, 0:19-cv-60012-DPG (S.D. Fla. 3/21/19); *Kennedy v. Shree Ram Jalaram, Inc.*, 19-60708, DE 13 (S.D. Fla. 4/18/2019); and *Kennedy v. Rushi Hospitality LLC*, 18-cv-62259-WPD, DE 26 (S.D. Fla. 2/6/19).

In the case at bar, the pleadings set forth a claim for informational injury - based on the failure of the Defendant to provide information the law required it to provide to the Plaintiff. For the reasons set forth in the authorities below, this is a complete injury and nothing additional is required. However, Plaintiff's affidavit establishes additional injury, because it explains her travels to the area and plans to return.

## IV.   Defendant's Theory Has Been Widely Rejected

Defendant ignores the overwhelming body of caselaw that hold that the law omits any requirement that the disabled plaintiff intend to book a room or visit the hotel. Although this Plaintiff intends to visit the area, stay in hotels, and is injured because the failure of the Defendant's hotel to comply with the Regulation deprives her of the information she needs to plan her trip, none of this is required. In other words, the Plaintiff's encounter with the discriminatory information is sufficient.  In *Laufer v. U.L.S.T., LLC dba Waterfront Hotel & Marina*, 2020 U.S. Dist. LEXIS 206417  (N.D.Ill. 11/4/20) ("Watefront"), one court recently held that Laufer has standing to sue for strictly informational injury for encountering a discriminatory

ORS even in the absence of any intent to ever travel to the area of the hotel.  In *Parks v. Richard*,

2020 U.S. Dist. Lexis 86790 (M.D. Fla. 2020), one court rejected the defendant's argument that

the plaintiff needed to intend to book a room at the hotel. The court held that the:

> ADA claim is based upon [defendant's] website failing to identify the accessible features
> of the motel and its rooms, in violation of 28 C.F.R. § 36.302(e)(1)(ii). Therefore, the
> relevant 'future injury' inquiry relates to the motel's website and reservation system, rather
> than the motel's physical property." [Citation omitted.] While Parks may have never
> visited the motel, he visited its website and several third-party sites.

*Id*. at *7.  In *Poschmann v. Fountain TN, LLC*, 2019 U.S. Dist. Lexis 159417, **4-6 (M.D. Fla.

2019), another court rejected the physical nexus argument, holding that the plaintiff's ADA claim

was based on the discriminatory website and, "[t]herefore, the relevant "future injury" inquiry

relates to the motel's website and reservation system, rather than the motel's physical property."

In *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. Lexis 87457. *8

(S.D. Fla. 2018), another court recognized the plaintiff's motive for returning to the

discriminatory website as either " to determine whether the Hotel is accessible to him, and, if so,

to reserve a room at the Hotel **or** to test the Hotel's Website reservation system for its compliance

with the ADA." (Emphasis added.) By inclusion of the word "or" the court held that motive to

review the website solely to test it was sufficient and that intending to book a room is not

required. Numerous other courts have rejected the intent-to-book a room/physical nexus

argument. See *Kennedy v. Nisha, Inc*., 2020 U.S. Dist. LEXIS 170829 (M.D. Fla. 9/17/20)(the

weight of authority supports standing). See also *Kennedy v. Galleon Resort Condominium Assn,

Inc., et al.*, 19-cv-62421-CMA, DE 52 (S.D. Fla. 1/28/20)[1]; *Kennedy v. Gold Sun Hospitality,*

---

[1]The unpublished opinions rejecting the physical nexus argument are contained as
exhibits to Plaintiff's Request For Judicial Notice, filed contemporaneously herewith.

*LLC*, 8:18-cv-842-T-33CPT, DE 23, at pp.  30-31, (M.D. Fla. June 18, 2018);  *Kennedy v. Swagath Hospitality, LLC*, 0:19-cv-60583-DPG, DE 27 (S.D. Fla. 1/2/2020);  *Kennedy v. WGA*, 2:19-cv-0095-RWS, DE 16, p. 9 (N.D. Ga. 11/5/2019);  *Kennedy v. Nila Investments, LLC*, 2:19-cv-90-LGW-BWC, DE 34 (S.D. Ga. 7/1/20); *Kennedy v. New Yorker Hotel, Miami, LLC*, 0:18-cv-62897-WPD, DE 34 (6/6/19); *Kennedy v. Murnane, et al.*, 0:18-cv-63086-WPD, DE 10 (S.D. Fla. 3/5/19).

Numerous other courts have held that a disabled person suffers injury-in-fact when they visit a hotel's discriminatory online reservations system. See  *Kennedy v. Sai Ram Hotels, LLC*, 2019 U.S. Dist. LEXIS 80111, *4-6 (M.D. Fla. 5/13/19), citing *Honeywell v. Harihar Inc.*, 2018 U.S. Dist. LEXIS 203740,(M.D. Fla. Dec. 3, 2018); *Kennedy v. Floridian Hotel, Inc.*,  2018 U.S. Dist. LEXIS 207984, at *9 (S.D. Fla. 2018);  *Brooke v. Regency Inn-Downey, LLC*, 2017 U.S. Dist. Lexis 150716 (D. Ariz. 2017). Numerous additional cases support the proposition that viewing a discriminatory commercial website constitutes injury-in-fact in the context of vision impairment based claims. See, e.g. *Carroll v. Fedfinancial Fed. Credit Union*, 324 F. Supp. 3d 658, 664 (E.D. Va. 2018); *Access Now, Inc. v. Otter Prods., LLC*, 280 F. Supp. 3d 287, 294 (D. Mass. 2017); *Jones v. Piedmont Plus Fed. Credit Union*, No. 1:17-CV-5214- RWS, 2018 WL 4694362, at *1 (N.D. Ga. Sept. 26, 2018).

Defendant's entire theory regarding standing completely misses the mark. In cases involving discrimination which is only encountered when the plaintiff visits the physical property, the locus of injury is at the property. Thus, the reference to distance between residence and the physical property is appropriate in cases such as  *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1327 (11th Cir. 2013). However, courts have rejected the applicability of such

cases to claims involving website discrimination. See *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. Lexis 209202, *30 (S.D.N.Y. 2019) (holding that cases applying distance element to discrimination at physical properties are irrelevant to website discrimination claims). The issue is whether the plaintiff would return to the discriminatory website: not the physical property. *Id.* See also *Parks,* 2020 U.S. Dist. Lexis 86790 at *6;   *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist. Lexis 80111, * 9 (M.D. Fla. 2019). Another court has held that the distance factor not applicable to commercial websites (in vision impaired discrimination) because (1) website cases do not involve physical locations; and (2) no travel is required. *Gniewkowski, et al v. Lettuce Entertain You Enterprises, Inc., et al.*, 251 F. Supp.3d 908, 920 (W.D. Pa. 2017).[2]

## V.    Testers Have Standing

Testers have standing under Title III of the ADA. *Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1333-34 (11th Cir. 2013); *Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust*, 867 F.3d 1093, 1101 (9th Cir. 2017). See also *Tandy v. City of Wichita*, 380 F3d 1277, 1285-90 (10th Cir. 2004)(recognizing tester standing to sue under Title II ADA). As such, the disabled person's motive is entirely irrelevant because all that matters is whether they encountered discrimination as defined by plain words the Statute. *Marod*, *passim*. Some courts have held that status a tester " plausibly increases the likelihood that she will visit the [defendant's] website again to test its ADA compliance." *Kennedy v. Sai Ram Hotels*, 2019

---

[2]The distance factor is also not applicable in the context of hotels because hotels are, by nature, established to accommodate travelers from afar. *Parks*, 2020 U.S. Dist. Lexis 86790 *6; *Bodley v. Plaza Management Corp.*, 550 F.Supp.2d 1085, (D. Ariz. 2008);  *D'Lil v. Best Western Encina Lodge & Suites*, 415 F. Supp.2d 1048, 1056 (C.D. Cal. 2006).

U.S. Dist. Lexis 80111, * 9 (M.D. Fla. 2019); *Marod*, 733 F.3d at 1336 (explaining that

plaintiff's status as a tester indicated that he would revisit the property many times and therefore

tended to show a real and immediate threat of future injury).  Moreover,"[i]t is not unprecedented

in this country for advocacy groups and individual members of advocacy groups to find it

necessary to file a long trail of lawsuits in federal courts to enforce legal and civil rights." *Marod*,

733 F.3d at 1326. The entire purpose of the ADA and its fee shifting provision was to eradicate

discrimination against disabled persons by encouraging individuals to act as private attorneys

general to actively enforce the provisions of these civil rights statutes. See  *Hensley v. Eckerhart*,

461 U.S. 424, 445 (1983) ("All of these civil rights laws depend heavily upon private

enforcement...").  Indeed, if it were not for this Plaintiff, Defendant would be free to discriminate

against disabled persons.

## VI.    The Rules Of Statutory Construction Prohibit The Imposition Of A Physical Nexus Requirement

### A.    Plain Language

The Defendant argues that Plaintiff does not have a cause of action for reviewing

Defendant's discriminatory ORS, unless she also intends to book a room at the hotel.

(Hereinafter sometimes referred to as "physical nexus" or "intent-to-book").

As the Eleventh Circuit Court stated in *Marod*., 733 F.3d at 733-34: "Our duty is to say

what statutory language means, not what it should mean, and not what it would mean if we had

drafted it." "We are not at liberty to rewrite the statute to reflect a meaning we deem more

desirable.". *Marod*, 733 F.3d at 1334, citing  *Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228,*

*128 S. Ct. 831, 841(2008)*. Under the rules of statutory construction, a court must begin its

8

analysis with the plain language of the statute and enforce it according to its terms. *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). The court's first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Where the statute conveys a plain and unambiguous meaning, the court looks no further. *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279, 1283 (11th Cir 2002). If the language is unambiguous, no further inquiry is necessary. *Clark v. Astrue*, 602 F.3d 140, 147 (2d Cir. 2010). A court cannot rewrite a statute to reflect a meaning it deems more desirable. *Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 (2008)*. A court is not allowed to add or subtract words from a statute. *Marod*, 733 F.3d at 1334. In the case at bar, the Defendant essentially requests that this Court ignore the plain and unambiguous words of the Statute and Regulation and judicially add an intent or physical nexus requirement, in violation of the applicable rules of statutory construction.

Plaintiff's claims are based on the following: 42 U.S.C. Section 12188(a) provides for injunctive relief to "any person who is being subjected to discrimination on the basis of disability in violation of this subchapter..." 42 U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the ... services ... of any place of public accommodation.... 42 U.S.C. Section 12182(b)(2)(A) provides that the definition of "discrimination" includes: "a failure to make reasonable modifications in policies, practices, or procedures ... to afford such ... services ... to individuals with disabilities...." 42 U.S.C. Section 12182(b)(2)(A)(ii). Pursuant this latter Subsection, the Department Of Justice ("DOJ") promulgated the Regulation, which requires that hotel online reservations systems provide a booking option for accessible rooms (in the same manner as other rooms) and

additionally provide information about whether or not the features at the hotel are truly accessible. The Statute and Regulation[3] are directly on point and unambiguously spell out all the elements of a cause of action.  Failure of an online reservations system to comply with the requirements of the Regulation constitutes a failure to comply with 42 U.S.C. Section 12182(b)(2)(A)(ii).  This qualifies as "discrimination" in denial of full and equal enjoyment of a service[4] and is thus a violation of 42 U.S.C. Section 12182(a) and is thus fully actionable without more required. It also constitutes "discrimination' under Section 12182(b)(2)(A)(ii). Under Section 12188, "any person who is being subjected to discrimination" has the right to sue.

The rules of statutory construction mandate a finding that a physical nexus requirement can NOT be imposed because any language expressing this requirement is conspicuously missing from the above cited Regulation and Statutory subsections.

### B.      Truthful Information, Testers And Intent

In  *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), the Supreme Court held that black testers had suffered injury under the Fair Housing Act and had the right to sue for deprivation of truthful information, even though they did not intend to rent or purchase an apartment. The Court held  that:

> "As we have previously recognized, "actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .'" *Warth v. Seldin*, [522 U.S. 490],  500 [(1975)], quoting *Linda R. S. v.*

---

[3]A regulation promulgated pursuant to Congressional authority must be given controlling weight. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984).

[4]A website is a "service" of a place of public accommodation. *Haynes v. Dunkin Donuts, LLC*, 741 Fed. Appx. 752, 754 (11th Cir. 2018) (unpublished) (describing a commercial website as a "service" of a place of public accommodation); *Nat'l Fed'n Of The Blind v. Target Corp.*, 452 F. Supp. 946, 953 (N.D. Cal. 2006)(same).

> *Richard D*., 410 U.S. 614, 617, n. 3 (1973). Accord, *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212 (1972) (WHITE, J., concurring). Section 804(d), which, in terms, establishes an enforceable right to **truthful information** concerning the availability of housing, is such an enactment. A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d). See *Pierson v. Ray*, 386 U.S. 547, 558   (1967); *Evers v. Dwyer*, 358 U.S. 202, 204 (1958) (per curiam).

*Havens Realty*, 455 U.S. at 373-74 (Emphasis added.)

In *Marod*, 733 F.3d at 1330-33, the Eleventh Circuit compared the operative language of the ADA and found that it substantially paralleled the same language used by the *Havens Realty* Court and the Tenth Circuit's holding in *Tandy v. City Of Wichita*, 380 D.3d 1277 (10th Cir. 2004)[5], in holding that testers have standing and that intent and motive are entirely irrelevant.

In  *Tandy*, 380 F3d at 1290, the Tenth Circuit applied *Havens Realty* to a Title II ADA action as follows:

> [Plaintiff] has shown that her injury is traceable to the action she seeks to have adjudicated. The action she seeks to have adjudicated is Wichita Transit's alleged **failure to provide her with adequate information** concerning its transportation services.... [Plaintiff's] affidavit suffices, at this stage of litigation, to show that she could not obtain any information from the TDD line. [Plaintiff's] injury is therefore traceable to Wichita Transit's allegedly wrongful failure to provide her with adequate information concerning its transportation services. This injury is redressable by compensatory or nominal damages. Therefore, Jeffries has standing to sue for damages.

(Emphasis added).  Thus, under *Havens Realty* and *Tandy*, testers have standing and suffer injury in fact when they are deprived of information which a defendant is obligated to provide them. Moreover, they have standing as testers and no intent requirement can be imposed. Rather, a

---

[5]In *Tandy*, the Tenth Circuit had performed a similar analysis in holding that testers have standing under the ADA's Title II.

court must look strictly to the plain language of the statute which created the injury.

*Havens Realty* was also followed in *Watts v. Boyd Properties*, 758 F.2d 1482, 1485-86 (11th Cir. 1985), in which black testers who had no intention of renting apartment had standing to sue for receiving misleading information from defendant about apartment availability.

In addition to *Havens Realty* and *Watts*, numerous courts have recognized injury strictly limited to the deprivation of information with nothing additional required. In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), the Supreme Court held that improper information which violated the Fair Credit Reporting Act did not, by itself, constitute injury, but specifically recognized the existence of statutes which provide that the dissemination of improper information constitutes an injury with nothing more required.

> Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified. See *Federal Election Comm'n v. Akins*, 524 U. S. 11, 20-25, [] (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U. S. 440, 449, [] (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

*Spokeo,* 136 S.Ct. at 1549-50.  Numerous other circuit courts have followed *Havens Realty*, 455 U.S. 363 (1982) in recognizing informational injury. *Ragin v. Harry Maclowe Real Estate* Co., 6 F.3d 898, 904 (2nd Cir. 1993)(black testers had standing to sue over discriminatory advertisement even though they had no intention of renting apartment); *Bensman v. United States Forest Serv*., 408 F.3d 945, 955-57 (7th Cir. 2005)(surveying cases and statutes where informational injury is recognized and actionable);  *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 694 (7th Cir. 2018)

("Even though not all statutory violations inflict concrete personal harm, withholding information when a statute requires its publication—sometimes called an 'informational injury'—may do so."); *Carter v. Welles-Bowen Realty, Inc.* 553 F.3d 979, 989 (6th Cir. 2009)(discussing informational injury); *Wilderness Soc'y v. Rey*, 622 F.3d 1251, 1258-60 (9th Cir. 2010)(discussing informational injury); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 273-74 (3rd Cir. 2016)(recognizing intangible harm as including unlawful denial of access to information subject to disclosure); *People For The Ethical Treatment Of Animals v. United States Dep't of Agric.*, 797 F.3d 1087, 1094-95 (D.C. Cir. 2015)(the plaintiff had standing to sue for being deprived information required by law);  *Wilderness Soc'y v. Rey*, 622 F.3d 1251, 1258-60 (9th Cir. 2010)(discussing informational injury); *Carello v. Aurora Policemen Credit Union*, 930 F. 3d 830, 835 (7th Cir. 2019)(recognizing informational injury).  On this issue, the *Carello* court, 930 F.3d at 835, explained:

> A harm is not an informational injury simply because it has something to do with information. An informational injury occurs when the defendant refuses to provide the plaintiff with information that a law—typically, a sunshine law—entitles him to obtain and review for some substantive purpose. See, e.g., *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21, 24-25 [] (1998) (concluding that voters' inability to obtain information subject to disclosure under the Federal Election Campaign Act of 1971 is a sufficiently concrete injury); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449[] (1989) (explaining that, to satisfy Article III's injury requirement, advocacy organizations requesting information subject to disclosure under the Federal Advisory Committee Act need only show "that they sought and were denied" the information); *Casillas*, 926 F.3d at 337-38 ("[Akins and Public Citizen] hold that the denial of information subject to public disclosure is one of the intangible harms that Congress has the power to make legally cognizable." (emphasis omitted)). In such cases, a plaintiff "need not allege any additional harm beyond" his failure to receive information that the law renders subject to disclosure. *Spokeo*, 136 S. Ct. at 1549.[6]

---

[6]In *Macy v. GC Servs., L.P.*, 897 F.3d 747, 754 (6th Cir. 2018), the Sixth Circuit noted that "[a] long line of Supreme Court precedent, cited approvingly in *Spokeo*, supports the conclusion that *Spokeo* did not mean to disturb the Court's prior opinions recognizing that a

The law can be summarized as follows: If the defendant is under a legal mandate to provide information to the class of persons of whom plaintiff is a member, then failure to provide that information gives rise to injury-in-fact, or "informational injury" and nothing more is required and the plaintiff's intent or tester status is irrelevant.[7]

### C.    Restrictive Language Found Elsewhere Cannot Be Imported

It is highly significant, and dispositive, that other subsections contain restrictive language which is conspicuously absent from the subsections and Regulation that govern an ORS.

> "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."

*Bates v. United States*, 522 U.S. 23, 29-30 (1997); *INS v. Cardoza—Fonseca*, 480 U.S. 421, 432 (1987).  Although not an ADA case, the Supreme Court's decision in *Bates* is helpful. There, the Court analyzed whether a lower court could properly impose an intent requirement into a criminal statute and held that because such a requirement was present in a different subsection, but missing from the one at issue, that it could not be judicially imposed. *Id.* at 29-30. This concept was also applied in *Havens Realty*, 455 U.S. at 374, which noted that the requirement of a "bona fide offer" was included in one section of the FHA, but could not be applied to the testers at issue because it was not included in the section that governed. In *Marod*, 733 F.3d at 1333 and *PGA Tour v. Martin*, 532 U.S. 661, 678-79 (2001), it was noted that because a "client

---

direct violation of a specific statutory interest recognized by Congress, standing alone, may constitute a concrete injury without the need to allege any additional harm."

[7]For example, the statute at issue in *Spokeo* required the defendant to provide accurate information to third parties (creditors) - of whom the plaintiff was not a member of the class. By contrast, the Regulation and Statute in this instance require that hotels provide certain information to disabled persons - the class of which this plaintiff is a member.

or customer" restriction was contained in another subsection of the ADA, but absent from the provisions that governed their cases (12182(a)), it could not be imposed as a requirement.

In addition to the "clients or customers" requirement of 42 U.S.C. Section 12182(b)(1)(A), two other subsections of this statute also contain additional restrictions imposing physical nexus or intent requirements. 42 U.S.C.  Section 12182(b)(2)(A)(i) prohibits:

> "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities *from* fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations..." (Emphasis added.)

In that Subsection, the word "from" is critical because its insertion in the Subsection means that a disabled person's encounter with discriminatory eligibility criteria by itself does not give rise to a cause of action unless and until that criteria prevents them **"from"** full and equal access to goods or services. Similarly, 12182(b)(2)(A)(iii) defines discrimination as including:

> a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals **because of** the absence of auxiliary aids and services...

(Emphasis added.) Under this subsection, absence of an auxiliary aid (i.e. screen reader software), is not discrimination unless and until it additionally causes exclusion, denial of services, segregation or other different treatment. In short, 12182(b)(2)(A) has four sub-parts: two of which have physical nexus requirements and two of which do not. 12182(b)(2)(A)(ii), which governs online reservations systems, does NOT have any such requirement.  Because such language is conspicuously absent from any of the provisions that govern online reservations systems, it cannot be imposed.

**D.   Defendant's Reference To *Rendon* And Commercial Website Cases Are Unavailing**

15

In support of its argument that a physical nexus is required, Defendant cites *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1281-82 (11th Cir. 2002),  *Haynes v. Dunkin' Donuts LLC*[8], 741 F. App'x 752, 754 (11th Cir. 2018),  *Buchholz v. Aventura Beach Assoc.*, 2018 U.S. Dist. Lexis 2177 (S.D.Fla. 2018), and *Price v. Escalante-Black Diamond Golf Club, LLC*, 2019 U.S. Dist. LEXIS 76288 (M.D.Fla. 2019). However, Defendant's references are unavailing.

First, *Rendon* did not involve website discrimination, but instead involved a telephone screening process for contestants on Who Wants To Be A Millionaire? Critically, that case involved application of Subsection 12182(b)(2)(A)(i)(governing eligibility criteria). As discussed above, that subsection contains a physical nexus requirement ("from").

*Dunkin Donuts*, *Buchholz* and *Price* are not ORS cases. Rather, they all involved claims by vision impaired individuals for failure of commercial websites to be compatible with screen reader software. Such cases are distinguishable in two fundamental ways. First, such discrimination falls under Subsection 12182(b)(2)(A)(iii)(failure to provide an auxiliary aid or service). See *Dunkin Donuts*, 741 Fed. Appx. at 755.  As stated above, this Subsection contains language that imposes a physical nexus requirement ("because of").

Thus, all of these cases involve different subsections which have a physical nexus requirement. *Rendon* involved Subsection 12182(b)(2)(A)(i) and the screen reader software compatibility cases involved  involves Subsection 12182(b)(2)(A)(iii). The operative physical nexus language from these subsections cannot be transposed into the subsection governing ORS

---

[8]In Dunkin Donuts, the Eleventh Circuit was presented with two arguments: 1) whether the pleadings set forth a physical nexus and (2) whether the imposition of a physical nexus requirement was proper, given the rules of statutory construction. The Eleventh Circuit reversed based on the lesser issue of whether the pleadings satisfied the district court's nexus requirement and therefore did not address the issue of whether the requirement was proper.

discrimination - Subsection 12182(b)(2)(A)(ii).

Second, screen software/vision impairment cases do not involve any promulgated regulation and they do not involve any legal obligation by the defendant to provide certain information to disabled persons. Thus, under *Spokeo*, some kind of nexus or additional injury must be shown. By contrast, by virtue of the Regulation, hotels are obligated to provide certain information to disabled persons and therefore, under *Spokeo*, *Havens Realty*, *Watts* and the slew of cases cited above, the plaintiff has suffered information injury and nothing additional is required.

**VII.    Plaintiff Has Established Intent To Return**

Various courts have held that status a tester " plausibly increases the likelihood that he or she will visit the [defendant's] website again to test its ADA compliance." *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist. Lexis 80111, * 9 (M.D. Fla. 2019). *Marod*, 733 F.3d at 1336 (explaining that plaintiff's status as a tester indicated that he would revisit the property many times and therefore tended to show a real and immediate threat of future injury); *Poschmann*, 2018 U.S. Dist. Lexis 87457 at *8(holding that returning to the website to check it for compliance with the Regulation is a valid reason). In *Camacho*, the defendant had challenged plaintiff's intent on the basis that he had filed 50 similar complaints regarding the websites of schools all over the country. 2019 U.S. Dist. Lexis 209202, at *29. The court held that the plaintiff did not need to intend to visit the subject properties, but only their websites. *Id.*

Critically, in the instant case, the Plaintiff has a system whereby she makes sure she visits the ORS in each case shortly after the respective complaint is filed, then again when the defendant is required to bring its ORS into compliance with the law. *Id*. Thus, she ensures that

she either will again suffer injury if the defendant does not comply with the law, or will benefit if the defendant does indeed comply. Under *Parks*., 2020 U.S. Dist. Lexis 86790, at *7, this suffices to establish standing. In fact, Plaintiff has already revisited the Defendant's ORS.

## VIII.   Plaintiff Does Intend To Visit Georgia

Even though such is not necessary for purposes of standing, Plaintiff does indeed intend to visit Georgia as soon as the Covid crisis abates. Laufer Affid., para. 5. Plaintiff has been to Georgia approximately 20 times, including 6 times in the past five years. *Id*. She travels throughout the State, intends to do so in her next trip, and must stay in area hotels. However, because this Defendant and so many others fail to comply with the law, Plaintiff lacks the information she requires to make a meaningful choice. *Id.*

## IX.   Defendant Has Failed To Establish Compliance With Anything

The screenshots attached to Laufer's Affidavit demonstrate that the various websites used by Defendant identify and allow for booking of numerous kinds of rooms (i.e. Standard Room, King Bed, 2 Queen Beds, Sofa Bed, King Suite, etc.). Each of these descriptions have links on which the viewer can click to book a room. Completely absent from these sites are any accessible rooms with similar booking options.

Defendant claims that the various websites through which it takes reservations are compliant.[9]  These websites are booking.com, hotels.com, travelocity, trip.com, agoda,

---

[9]Defendant does not indicate whether or not it made any revisions to its websites in response to this lawsuit. If it had, such claims would invoke the mootness doctrine, thus triggering an analysis under such cases as *Haynes v. Hooters of Am., LLC*, 893 F.3d 781, 874 (11th Cir. 2018), in which the Eleventh Circuit warned that website discrimination cases cannot be mooted.

reservations.com, hotels.bookety, and cheaptickets. DE 5-6.  Defendant offers no sworn

testimony, but relies only on several screenshots of several websites it uses as part of its ORS,

filed at DE 5-6. However, these screenshots plainly show that Defendant fails to identify or allow

for booking of any accessible rooms in the same manner as other non-accessible rooms.

By this alone, Defendant fails to show that its ORS is compliant. In *Kennedy v. Siesta Inn

& Suites, Inc.*, 2020 U.S.App. Lexis 31073 (11th Cir. 2020)(unpublished), the Eleventh Circuit

held that evidence that third party booking sites remain non-compliant warrant a continuation of

the plaintiff's case.  See also *Parks v. Richard*, 2020 U.S. Dist. Lexis 127639, **4-5 (M.D.Fla.

2020)(live controversy presented because third party sites non-compliant),

Indeed, the Regulation plainly requires that designated accessible rooms be bookable in

the same manner as other rooms. 28 C.F.R. Section 36.203(e)(1)(i). The screenshots submitted

both by Plaintiff and Defendant establish that the ORS identifies numerous classes of non-

accessible rooms and provides a booking option for each, but completely fails to provide any

such booking option for accessible rooms. This is a violation of the Regulation.

Nor do the vague accessibility references on the websites suffice.

The Department Of Justice, which promulgated the Regulation, issued a Guideline stating

that: "even when information is provided it often is found to be incorrect upon arrival." Part 36

Nondiscrimination on the Basis of Disability in Public Accommodations and Commercial

Facilities, p. 77, Exhibit B attached hereto. The DOJ Guidelines provide that a hotel's ORS must

indicate whether conditions at the hotel are accessible. If the hotel is built in compliance with the

applicable ADA Standards For Accessible Design, then it suffices to identify such features as

"accessible." *Id*., p. 78. However, for features that do not comply with the applicable ADA

Standards, the ORS must identify those features and describe their measurements or conditions. *Id*. Defendant has provided no evidence or expert testimony that its website accurately describes the conditions at the hotel, whether they comply or deviate from the applicable ADA standards set forth in either the ADAAGs or 2010 ADA standards for Accessible Design.

Defendant's websites have nothing more than generalized boilerplate statements, such as "Lowered sink", "Toilet with grab rails", "Wheelchair accessible", "In-room accessibility", etc.

One site (Travelocity) indicates that disabled persons must contact the property. This is insufficient. In *Poschman v. Coral Reef Of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. Lexis 87457 (S.D. Fla. 5/22/18), one Court in this District rejected the argument that this made the site compliant. There, the defendant had argued that the disabled plaintiff could have called the hotel by telephone or by emailing the hotel through information on its "Contact Us" tab on the website. The Court rejected this argument, stating:

> The relevant regulation provides that a reservation for an accessible guest room must be able to be made "during the same hours and in the same manner as individuals who do not need accessible rooms." § 36.302(e)(1)(i). Guidance published by the DOJ on the regulation further clarifies its meaning. See *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S. Ct. 2381, 129 L. Ed. 2d 405 (1994) (giving "substantial deference" and "controlling weight" to an agency's interpretation of its own regulations). The guidance provides that "basic nondiscrimination principles mandate that individuals with disabilities should be able to reserve hotel rooms with the same efficiency, immediacy, and convenience as those who  do not need accessible guest rooms. 28 C.F.R. Pt. 36, App. A, Guidance on Revisions to ADA Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and Commercial Facilities (Mar. 15, 2011) (hereinafter "DOJ Guidance") (emphasis added) (rejecting comments by hotels to change language to "in a substantially similar manner" from "in the same manner"). Irrespective of whether individuals seeking to make reservations can do so by telephone or by email, it is readily apparent that individuals seeking to reserve accessible hotel rooms cannot do so on the Website in the same manner — with the same efficiency, immediacy, and convenience — as those seeking to reserve non-accessible guest rooms. § 36.302(e)(1)(I).

2018 U.S. Dist. Lexis 87457 at **10-11.  See also *Juscinska v. Paper Factory Hotel, LLC*, 2019

U.S. Dist. Lexis 92550 **9-10 (S.D.N.Y. 2019)(ability to telephone or email hotel is not "same

manner" and therefore not a viable defense). In *Parks*, 2020 U.S. Dist. Lexis 127639, at **3-4,

one court discussed the deficiency of similar statements:

> The Expedia, Hotels, and Orbitz sites are basically identical. The sites say Shipwreck has
> disabled parking, but nothing reveals Shipwreck offers accessible rooms. There is,
> however, the following statement: "If you have requests for specific accessibility needs,
> please note them in the special requests field on the booking page after selecting your
> room.Yet this disclaimer is not enough to allow disabled individuals to book accessible
> rooms like nondisabled patrons nor determine whether Shipwreck meets accessibility
> needs. The Booking site is a bit different. Along with disabled parking, this website
> informs patrons "Entire unit  located on ground floor." But nothing explains what that
> means. Finally, the Priceline site comes the closest to providing accessibility information.
> Under its accessibility section, the site lists "Handicapped Rooms/Facilities." Still, there
> does not appear to be any way to book an accessible room. Thus, the information on all
> five sites is deficient.

Critically, one of Defendant's sites indicates that wheelchair accessibility "may have

limitations". See DE 5-6, p. 12. Thus, Defendant's own evidence indicates that not all the

features of the hotel are in compliance with the applicable standards. However, not only does this

website fail to provide any additional information as to what features do or do not comply with

the standards, but this disclaimer is conspicuously absent on any of the other sites, which fail to

warn disabled persons that they might book a room at the hotel, only to discover the existence of

undisclosed discriminatory barriers.

## X.   Conclusion

For the foregoing reasons, Defendant's Motion must be denied.

Respectfully submitted,

By: */s/ Tristan W. Gillespie*
Tristan W. Gillespie, Esq.

THOMAS B. BACON, P.A.
5150 Cottage Farm Rd.
Johns Creek, GA 30022
Tel:  404.276.7277
gillespie.tristan@gmail.com

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record this 17th day of November, 2020.

By: */s/ Tristan W. Gillespie*
Tristan W. Gillespie, Esq.

THOMAS B. BACON, P.A.
5150 Cottage Farm Rd.
Johns Creek, GA 30022
Tel:  404.276.7277
gillespie.tristan@gmail.com

22